IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

v.

ALEX KOSCHTSCHUK, et al.,

                              Defendants.
_____

**DECISION AND ORDER**

09-CR-0096(S)(M)

            This case was referred to me by Hon. William M. Skretny for supervision of all

pretrial matters [108].[1]  Before me are defendants' non-dispositive pretrial motions [185, 188-

191, 195].[2]  Oral argument was held before me on  December 17, 2009.   For the following

reasons, I order that defendants' non-dispositive pretrial motions be  DENIED in part and

GRANTED in part.


                              **BACKGROUND**

            The nineteen defendants are allegedly members of the Chosen Few Motorcycle

Club ("CFMC").  They are charged in a thirty-two count third superseding indictment with, *inter*

*alia*, numerous racketeering counts [143].  Among the evidence in this case are consensual

_____

        [1]        Bracketed references are to CM/ECF docket entries.

        [2]        To the extent that defendants Rogowski, Phillians, Treadway, and Michael Segool have
also moved to dismiss all or part of the indictment, these motions are premature and may be renewed to
the extent they seek dispositive relief when a deadline is set to file dispositive motions.  Lathrop's motion
[188-2], pp. 5-16; Phillian's motion [188-2], pp.  22-23; Treadway's motion [188-2], pp. 34-35; Michael
Segool's motion [188-5], p. 9.

recordings made by David Ignasiak, a former member of the CFMC, and audio and video recordings pursuant to orders issued by Judge Skretny. Government's response [197], p. 2.

Because of the similar discovery issues confronted by the defendants, the moving defendants have joined in each other's motions. While some defendants have sought independent relief, others have merely joined in the relief sought by their co-defendants.[3]

## ANALYSIS

### A. Motion for *In Camera* Examination of The Evidence Establishing that David Ignasiak Consented to Make the Monitored Recordings

Defendant Whiteford moves to have the court conduct an *in camera* examination of any evidence which establishes Ignasiak's consent to making the monitored recordings. Whiteford's motion [185], ¶¶11-15. At oral argument, defendant Whiteford conceded that the government does not have to establish Ignasiak's consent for each individual recording.[4]

"'It will normally suffice (to prove consent) for the government to show that the informer went ahead with a (conversation) after knowing what the law enforcement officers were about.' . . . [T]his showing, which is considerably less stringent than that required to show consent for a physical search, may consist of circumstantial evidence, rather than direct evidence from the informant or from agents to whom the informant gave his express consent.

In the case at bar, the government demonstrated, at a mid-trial hearing conducted

---

[3]	Defendants Beutler [195], Kuznicki [190], and Diana [188-2], p. 21 have sought to join in the co-defendants' motions without seeking any independent relief.

[4]	However, at oral argument, defendant Koschtschuk indicated that the government must establish consent as to each recording.

. . . on this issue, that the informant at some personal discomfort and substantial risk, allowed himself to be fitted with a recording device. The inescapable inference from this showing is that the informant proceeded, knowing his conversations were being recorded, and therefore gave his consent." United States v. Fuentes, 563 F.2d 527, 533 (2d Cir.), cert. denied, 434 U.S. 959 (1977).

The fact that Ignasiak made 149 hours of consensual recordings strongly undercuts any claim that he did not consent to wearing the recorder and making the recordings. Government's response [197], p. 8. Although defendant Whiteford speculates as to Ignasiak's lack of consent, "basing discovery requests on nothing more than mere conjecture renders any request for information outside the ambit of Rule 16 a non-starter." United States v. Persico, 447 F. Supp. 2d 213, 217 (E.D.N.Y 2006).

In any event, as argued by the government, Ignasiak's statements (written or oral) authorizing the FBI to equip him with a recording device may constitute 18 U.S.C. §3500 material or internal governmental documents made in connection with an investigation. Government's response [197], p. 8. To the extent they constitute Jencks Act material, the government represents that it will produce such material in accordance with Judge Skretny's customary pretrial practices. Government's response [192], p. 21. To the extent this material constitutes internal governmental documents, disclosure of these materials is generally prohibited unless material to preparing the defense. *See* Fed. R. Crim. P. ("Rule") 16(a)(1)(E)(i), (a)(2).

"Materiality is defined as material either countering the Government's case or bolstering a defense. 'Materiality means more than that the evidence in question bears some

abstract logical relationship to the issues in the case. There must be some indication that pretrial disclosure of the disputed evidence would have enabled the defendant significantly to alter the quantum of proof in his favor.'" <u>United States v. Weisberg</u>, 2007 WL 3015222, *1 (W.D.N.Y. 2007) (Scott, M.J.) (<u>quoting</u> <u>United States v. Maniktala</u>, 934 F. 2d 25, 28 (2d Cir. 1991)). At this stage, defendant Whiteford's speculative assertions do not establish that this information is material to his defense sufficient to warrant either the disclosure of or my *in camera* review of this information.

At oral argument defendant Whiteford argued that it would be beneficial to address this issue now and avoid the mid-trial hearing conducted in <u>Fuentes</u> on the issue of consent. While I agree that resolution of this issue before trial might be preferable, this, standing alone, does not overcome defendant's burden to establish his entitlement to pretrial discovery. Therefore, this aspect of defendant's motion is denied, without prejudice to renewal at a later date.

## B.    Motion for Production of the Minimization Instructions

Defendant Whiteford seeks the minimization instructions provided to the monitoring agents. Whiteford's motion [185], ¶¶16-22. There is conflicting case law from this District on this issue. *Compare* <u>United States v. Rivera</u>, 198 F.R.D. 48, 53 (W.D.N.Y.1999) (Foschio, M.J.) ("Defendants' request for any minimization guidelines provided to the investigators must also be denied. The court fails to see how such information is relevant to whether the investigators properly executed the wiretap. Whether proper minimization was followed may be determined from a comparison of the transcripts of the intercepted conversations with the scope of authorization as stated in the wiretap orders. Defendants' request

as to such minimization guidelines seeks unnecessary and therefore immaterial information.");

United States v. Chimera, 201 F.R.D. 72, 78-79 (W.D.N.Y. 2001) (Arcara, J./Foschio, M.J.)

with Hon Hugh B. Scott's July 23, 2008 Decision and Order in United States v. Monae Davis, et

al. (7-CR-245), p. 3 ("The defendants seek copies of all progress reports, minimization

instructions, and line sheets created in connection with the electronic surveillance in this case.

To the extent such materials have not already been produced, the government is directed to

provide copies of these documents to the defendants.").[5]

Faced with these conflicting authorities, I find the rationale set forth by Judge

Foschio in Rivera persuasive. Therefore, I conclude that the defendants are not entitled to

disclosure of the minimization instructions at this time.

I am mindful that one treatise has suggested that minimization instructions should

be produced if the defendant is challenging compliance with the minimization requirement:

> "Regardless of the limitations on pretrial discovery that courts
> have imposed, *disclosure of minimization instructions, monitors'
> logs, and progress reports should be routine, at least where the
> defense is challenging compliance with the minimization
> requirement.* These materials are the best evidence of what the
> monitoring agents were told about the minimization directive and
> requirement, how they undertook to minimize interception of
> non-pertinent conversations, and what they told the court during
> the surveillance. If the defense does not have these materials
> before the minimization hearing, the proceedings are likely to be
> more protracted and time-consuming for all concerned, including
> the court." Hon. James Carr and Patricia Bellia, 2 Law of
> Electronic Surveillance §7:12 (2009) (emphasis added).

---

[5] A copy of this unpublished opinion is attached as Exhibit G to the LaTona
Affidavit [185].

However, should defendants ultimately challenge the government's compliance with the minimization requirements, it will be "the Government's burden to make a prima facie showing of compliance with the minimization requirements. . . .  Once a prima facie showing is made, the burden shifts to the defendant to show that, despite good faith compliance with the minimization requirements, 'substantial unreasonable interception of non-pertinent conversations occurred.'" United States  v. Davis,  2008 WL 5115225, *5 (W.D.N.Y. 2008) (Scott, M.J./Skretny, J.). Thus, "the specific text of any instructions will therefore be irrelevant to the court's determination on the issue of compliance with §2518(5), unless the Government chooses to submit them in response to a motion to suppress on this ground . . . in which event they will be available to Defendants, or in the event the court should, after a review of any papers, filed in connection with a motion to suppress on this ground, determine that an evidentiary hearing on the issue is required."  Chimera, supra, 201 F.R.D. at 78-79.  Therefore, this aspect of defendant's motion is denied.

### C.       Motion for Production of Progress Reports

Defendant Whiteford seeks production of the progress reports submitted to Judge Skretny.  Whiteford's motion [185], ¶¶22-34.

Judge Skretny issued three orders permitting digital audio and video surveillance. The first order, dated October 22, 2008, continued through November 29, 2008 and targeted 9 individuals.  LaTona Affidavit [185], Ex. H.  The second order ran from January 22, 2009 through February 20, 2009, and targeted 25 individuals. Id.  The third order ran from February

27, 2009 through March 28, 2009, and targeted 27 individuals. Id. The initial order required the submission of two progress reports to Judge Skretny. LaTona Affidavit [185], ¶29.[6]

Relying on the fact that there was no court ordered surveillance for approximately two months between the first two surveillance orders signed by Judge Skretny and that during this period the number of targets increased from 9 to 25, defendant argues that there was no necessity for electronic surveillance in the first instance and that there were possible Franks violations. LaTona Affidavit [185], ¶¶26-27, 30.

Again, there exists conflicting case law from this District on this issue. *Compare* Chimera, supra, 201 F.R.D. at 77 ("the information contained in such reports will not materially aid Defendants' quest to discover potential defects in the initial applications for the Title III orders, of the execution or extensions of the orders. Any lack of probable cause for the issuance of the orders or a failure to otherwise comply with [18 U.S.C.] § 2518(1)(c) must be present itself on the face of the application.") *with* United States v. Monae Davis, et al. (7-CR-245), p. 3 ("The defendants seek copies of all progress reports, minimization instructions, and line sheets created in connection with the electronic surveillance in this case. To the extent such materials have not already been produced, the government is directed to provide copies of these documents to the defendants.").

Faced with these conflicting authorities, I find Judge Arcara's decision in Chimera persuasive. *See* United States v. Abdul-Ahad, 2009 WL 35473, *2 (D.Minn. 2009)("Courts generally deny requests to discover monitoring agent's rough notes, written

---

[6] "Whenever an order authorizing interception is entered pursuant to this chapter [18 USCS §§2510 et seq.], the order may require reports to be made to the judge who issued the order showing what progress has been made toward achievement of the authorized objective and the need for continued interception. Such reports shall be made at such intervals as the judge may require." 18 U.S.C. §2518(6).

summaries and interim progress reports.").  As explained in  United States  v. Orozco, 108

F.R.D. 313, 316 (D.C.Cal.1985):

> "disclosure of progress reports is not necessary in order to determine whether the government complied with the statutory requirements of 18 U.S.C. §2510, et seq. Progress reports are, for the most part, a summary of information already provided to defendants, i.e. the tapes, summaries and logs. Those items already provided to defendants are the original and best sources of information regarding statutory compliance. The applications for orders authorizing interception are the best sources of information to bolster an argument that the government lacked initial cause to seek such orders. The court does not see how progress reports issued after wiretaps have been initiated could reveal improprieties in original applications which must ultimately be reviewed in a motion to suppress based on the knowledge of the government agents as of the date the application was sought. Similarly, it is unlikely that progress reports would uncover material falsity contained in the initial application which would not be evidenced by the application itself or by agents' testimony."

"The theme underlying these requests is that only Defendants, upon review of the requested material, will be able to discern whether or not impeachment or exculpatory information is embedded therein.  As Defendants well know, though, the criminal pretrial discovery process does not work that way.  Rule 16 of the Federal Rules of Criminal Procedure outlines discrete categories of information the government must disclose.  *See* Fed.R.Crim.P. 16. Basing discovery requests on nothing more than mere conjecture renders any request for information outside the ambit of Rule 16 a non-starter."  Persico, supra,  447 F. Supp. 2d at 217. Therefore, this aspect of defendant's motion is denied.

**D.    Motion for Production of Physical Surveillance Reports**

Defendant Whiteford seek the reports prepared by the FBI agents to memorialize what they observed while conducting surveillance.  Whiteford's motion [185], ¶¶35-42; Government's response [197], p. 16. He argues that Ignasiak's "consent recordings clearly demonstrate that [Ignasiak] organized, directed and commanded the conduct currently characterized in Count 9 [axe handle assault on Eugene Siminski] as being illegal. Obviously, any physical surveillance reports indicating that those activities were being contemporaneously surveilled by the authorities would constitute Brady material and they should be disclosed as such documentation is unquestionably material to defense preparation." LaTona Affidavit [185], ¶42.  Defendant Whiteford also argues that this evidence is material to the preparation of his motion to dismiss for outrageous government conduct, and is also relevant to establishing that electronic surveillance was unnecessary.  Id., ¶¶39-40.

The government responds that the surveillance reports are exempted from disclosure by Rule 16(a)(2).  Government's response [197], p. 16. It also argues that the surveillance reports relating to the incident charged in Count 9 would not constitute Brady material  because the circumstances of the incident are known to the defendants.  Id., pp. 16-17.

"The concept of fairness embodied in the Fifth Amendment due process guarantee is violated by . . .  conduct that is 'so outrageous' that common notions of fairness and decency would be offended were judicial processes invoked to obtain a conviction against the accused." United States v. Schmidt, 105 F. 3d 82, 91 (2d Cir.), cert. denied, 522 U.S. 846 (1997).  Where police involvement in a crime is alleged, it "'would have to reach a demonstrable level of

outrageousness before it could bar conviction.'" Id. (quoting Hampton v. United States, 425 U.S. 484, 495 n. 7 (1976) (J. Powell, concurring)).

As discussed above, internal government documents are not generally discoverable unless the item is material to preparing the defense. Based upon his review of Ignasiak's audio recordings, which preceded and included the alleged axe handle incident charged in Count 9, defendant Whiteford's counsel argues that they "demonstrate that [Ignaskiak] organized, directed and commanded the conduct currently characterized in Count 9". LaTona Affidavit [185], 42. Given these representations as an officer of the court and mindful that the "'materiality standard [of Rule 16] normally is not a heavy burden'", I find that defendant Whiteford has set forth more than conjecture that there is a basis to conclude that any surveillance reports related to this incident may be material to a potential outrageous governmental conduct defense. However, defendant Whiteford has not established the materiality of any other surveillance reports. Therefore, I order that the surveillance reports related to the incident alleged in Count 9 of the third superseding indictment be produced, but otherwise deny this aspect of defendant's motion.

**E.** **Motion for Recordings Made from the Pole Camera**

Defendant Whiteford seeks the video/audio intercepts from the pole camera utilized by the government. Whiteford's motion [185], ¶¶43-45.

Although the government has no intention of using these images at trial, it will allow defendants to inspect the videos before determining if they want them. Government's response [197], pp. 17-18. The government also represents that "if, after [defendants] 'inspect'

several hundred hours of images . . . they still want a copy, we will produce it." Id, p. 18 n.7. Therefore, I deny this aspect of defendant's motion as moot.

### F. Motion for Disclosure of the Agency Instructions to Ignasiak

Defendant Whiteford seeks the instructions given to Ignasiak, including whether he was instructed to instigate the commission of criminal activity and whether Ignasiak deviated from the agency's instructions. Whiteford's motion [185], ¶¶55-58. He argues that this information is needed for a "potential pretrial motion to dismiss for the outrageous government conduct." [202], p. 6. The government argues that this is either Brady or Jencks material, which will be produced in accordance with Judge Skretny's customary practice. Government's response [197], p. 19.

I agree with the government that this is Jencks material. *See* United States v. Frey, 1986 WL 6875, *3 (W.D.N.Y. 1986) (Elfvin, J.) ("Both defendants seek an order requiring disclosure of any instructions given to participants who purportedly consented to the interception of conversations. Such material properly is Jencks material and need not be revealed at this time."). However, as discussed above, because I find that defendant Whiteford has demonstrated his entitlement to discovery concerning a potential outrageous governmental conduct defense, I likewise find that he has established his entitlement to discovery of the instructions, if any, the government provided to Ignasiak. Therefore, this aspect of defendant's motion is granted.

### G. Motion for Severance

Defendant Utz seeks severance "from any other defendant against whom the prosecution is permitted to introduce other-act evidence, pursuant to F.R.E [404(b)]". Utz's

motion [188-2], p. 3.[7]  He argues that the sheer size of a trial involving 19 potential defendants is too expansive to accomplish it within a reasonable amount of time.  Id.[8]

Although there may be reason to sever based on the number of defendants and counts  to be tried at this time (*see* United States v. Casamento, 887 F. 2d 1141, 1152 (2d Cir. 1989), cert. denied,  493 U.S. 1081 (1990) ("in assessing the appropriate number of defendants for any trial in which the prosecution's case is likely to require more than four months to present, the judge should oblige the prosecutor to make an especially compelling justification for a joint trial of more than ten defendants")), the number of defendants and issues to be tried may change as the case approaches trial.  Thus, "such motions are more appropriately heard and determined by the trial court, which is in the best position to rule on the issues presented." United States  v. Mireles, 2009 WL 4067643, *4 (W.D.N.Y. 2009) (Scott, M.J.).  Therefore, this aspect of defendant's motion is denied as premature, without prejudice to renewal before Judge Skretny.

### H.    Motion for Expert Disclosure

Defendant Utz seeks expert disclosure pursuant to Rule 16(a)(1)(G).  Utz's motion [188-2], p. 4.  Specifically, he seeks expert disclosure concerning the contents of any intercepted conversations.  Id.  At oral argument the government indicated that it did not intend to call any experts in this regard.   Therefore, this aspect of defendant Utz's motion is denied as moot.

---

[7]     A number of defendants filed a consolidated discovery request [188].  All page references to [188] are based upon CM/ECF numbering.

[8]     In his reply, defendant Murphy reserves his right move for severance after being provided with discovery and particularization. [205], ¶23.

**I.      Motion for Disclosure of Material Pursuant to Federal Rules of Evidence 404(b)**

Defendants Alan Segool and Koschtscuk seek pretrial disclosure of evidence admissible under Federal Rule of Evidence 404(b) and defendant Segool also seeks "the exclusion of any such proffered evidence found to be inadmissible pursuant to Rule 403 and 404(b)." Koschtscuk's motion  [188-4], pp. 29-32; Segool's motion [188-6], ¶¶4-15.  The government responds that it "is not aware of any evidence it may seek to have the Court admit under Rule 404(b)".  Government's response [192], p. 28.   Therefore, this aspect of defendants' motion is denied as moot.

**J.      Motion for Disclosure of Material Pursuant to Federal Rules of Evidence 608 and 609**

Defendant Alan Segool moves for pretrial disclosure of "the conduct, opinion, and reputation evidence as well as the criminal convictions the Government intends to use in cross-examination of *witnesses*".  Segool's motion  [188-6], ¶¶16-17 (emphasis added).

 "With respect to the defendant's requests under Rules 608 and 609, the only notice requirement imposed by either applies where a party intends to introduce evidence of a conviction that is more than ten years old.  Under such circumstances, Rule 609(b) mandates that 'the proponent [give] to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.' To the extent the government intends to use a conviction more than 10 years old, it must comply with this requirement.  The government has no obligation to provide the defendants

with notice of any material that will be used to impeach him pursuant to Rule 608 should he elect to testify." United States v. Barnett, 2009 WL 1044559, *2 (W.D.N.Y. 2009) (Scott, M.J.).

As the government highlights, until it knows the witnesses defendant intends on calling, it cannot provide this disclosure. Government's response [192], p. 31. Therefore, this aspect of defendant's motion is denied as premature, without prejudice to renewal at a later date.

**K.    Motion for Early Disclosure of <u>Jencks</u> Act Material**

Defendants Alan Segool and Koschtschuk move for early disclosure of <u>Jencks</u> Act material. Segool's motion [188-6], ¶¶18-21; Koschtschuk' motion [188-4], p. 40. The government responds that <u>Jencks</u> Act material will be provided to defendants in accordance with Judge Skretny's customary practices. Government's response [192], pp. 20-21. Therefore, this aspect of defendants' motion is denied as moot.

**L.    Motion for Disclosure of Informant Identities**

Defendants Alan Segool and Koschtschuk move for disclosure of informant identities. Segool's motion [188-6], ¶¶22-25; Koschtscuk's motion [188-4], pp. 54-60. The government responds that only one informant was used and he/she provided the information set forth in para 14 of the initial Title III affidavit. However, according to the government, the informant did not provide any evidence that directly impacted the case and will not be testifying at trial. Government's response [192], p. 23.

In general, the government may withhold from disclosure the identity of individuals who inform law enforcement officers of violations of the law. *See* <u>Roviaro v. United States</u>, 353 U.S. 53, 59 (1957); <u>United States v. Jackson</u>, 345 F. 3d 59, 69 (2d Cir. 2003), <u>cert</u>.

denied, 541 U.S. 956 (2004).  Defendant bears the burden of making "'a specific showing that disclosure was both material to the preparation of [the] defense and reasonable in light of the circumstances surrounding [the] case'".  United States v. Bejasa,  904 F. 2d 137, 139 -140 (2d Cir.), cert. denied, 498 U.S. 921 (1990).

Disclosure of a confidential informant's identity is an "extraordinary remedy". United States v. Muyet, 945 F. Supp. 586, 602 (S.D.N.Y. 1996).  "Speculation that disclosure of the informant's identity will be of assistance is not sufficient to meet the defendant's burden; instead, the district court must be satisfied, after balancing the competing interests of the government and the defense, that the defendant's need for disclosure outweighs the government's interest in shielding the informant's identity."  United States v. Fields, 113 F. 3d 313, 324 (2d Cir.), cert. denied, 522 U.S. 976 (1997).

"A confidential informant's identity or the contents of an informant's communication must therefore be disclosed if such information is 'relevant or helpful' to an accused's defense at trial, particularly in relation to a potential entrapment defense or a defendant's knowledge of the character of the contraband."  United States v. Yarborough,  2007 WL 962926, *5 (W.D.N.Y. 2007) (Foschio, M.J.) (quoting Rovario v. United States, 353 U.S. 53, 60-61 (1957)).  "Furthermore, even where a Defendant makes such a showing, 'disclosure of [a] confidential informant's identity is not required if the Government will call the informant as a witness at trial.'"  United States v. Paredes-Cordova, 2009 WL 1585776, *3 (S.D.N.Y. 2009).

In his reply, defendant Koschtschuk argues that disclosure is necessary because this individual is described in the Title III affidavit as "a different CHS who is a former member of the KMC".  [208], p. 5.  He argues that "as a former member of the Kingsmen Motorcycle

Club, the informant . . . may be able to provide important evidence bearing on essential elements of the offenses alleged in the indictment." Id.

In light of the allegations contained in the third superseding indictment of violence perpetrated by the CFMC against the Kingsmen Motorcycle Club, I find that shielding the informant's identity outweighs any need for disclosure especially where defendants speculate about the usefulness of this information. I also find no basis to conduct an *in camera* review of this information. Koschtschuk's reply [208], p. 5. Therefore, this aspect of defendants' motion is denied.

### M. Motion for an Audibility Hearing

Defendant Alan Segool requests that  an audibility hearing be conducted to "determine whether any tapes/audio recordings that the Government seeks to introduce at trial are audible".  Segool's motion  [188-6], ¶26.  The government responds that defendant Segool's request is premature and should be resolved after the government identifies which audio recordings it intends on using at trial.  Government's response [192], pp. 31-32.

Because defense counsel may be satisfied with the audibility of the tapes the government will introduce at trial once identified by the government,  it is unnecessary and premature for me to conduct an audibility hearing at this time. *See* United States v. Colombo, 2006 WL 2012511, *14 (S.D.N.Y. 2006).  Therefore, this aspect of defendant's motion is denied, without prejudice to renewal at a later date.

**N.      Motion to Compel a Search of the Personnel Files of Government Agent Witnesses**

Defendants Alan Segool and Koschtschuk seek to require the government to search the personnel files of the government agent or police witnesses to this case to determine the existence of any exculpatory or impeachment material. Segool's motion [188-6], ¶¶29-32; Koschtschuk's motion [188-4], pp. 63-64. The government represents that it will conduct such a review with respect to any testifying government agent in this matter. Government's response [192], p. 29. Based upon the government's representations, this aspect of defendants' motion is denied as moot.

**O.      Motion for Rule 16 Discovery and Notice of Intention Pursuant to Rule 12(b)(4)(B)**

Alex Koschtschuk moves for discovery pursuant to Rule 16 and notice of the government's intention to use evidence at trial pursuant to Rule 12(b)(4)(B). Koschtschuk's motion [188-4], pp. 6-9. The government indicates that it has provided every defendant with their prior statements and criminal records, all documents and objects pursuant to Rule 16(a)(1)(E), all search warrants executed in this case. Government's response [192], pp. 17 and 18. The government also represents that the forensic examinations conducted in this case will be produced and that no identification procedures were used. Id., pp. 19-20. Under these circumstances, I find that the government has complied with its Rule 16 obligations to date.

Among the evidence the government identifies that it intends to use in its case-in-chief is "[a]ll or part of the consensual recordings made by David Ignasiak [and] [a]ll or part of

the audio recordings and parallel video recordings of images made pursuant to the three Orders entered by the Court". Government's response [192], p. 32 Defendant Koschtschuk argues that the government should be more specific as to what portions of the audio and video intercepts, which are "hundreds of hours in duration", it will use at trial. Koschtschuk's reply [208], p. 7. He contends that the government should be "ordered to specify every recording by date, time and manner that it intends to introduce in its case in chief. Otherwise, the notice requirement is reduced to the meaningless statement of intent that has been provided". Id. This point was also argued by at least one other defendant at oral argument. However, defendants have not cited any case law in support of their position.

> Rule 12(b)(4)(B) provides that
>
> "At the arraignment or as soon afterward as practicable, the defendant may, in order to have an opportunity to move to suppress evidence under Rule 12(b)(3)(C), request notice of the government's intent to use (in its evidence-in-chief at trial) any evidence that the defendant may be entitled to discover under Rule 16."

"Rule 12(b)(4)(B) is not designed or intended to be used to obtain more specific discovery than that provided by Rule 16. . . . It is also 'not designed to aid the defendant in ascertaining the Government's trial strategy.' United States v. Cruz-Paulino, 61 F.3d 986, 994 (1st Cir.1995). Instead, Rule 12(b)(4)(B) is intended to facilitate efficient suppression motion practice by allowing the defendant to avoid filing a motion to suppress when the Government does not intend to use the evidence at issue." United States v. Bunch, 2009 WL 4784637, *1 (E.D.Tenn. 2009). See Rule 12, advisory committee note to 1974 amendment ("Although the defendant is already entitled to discovery of such evidence prior to trial under rule 16, rule 12

makes it possible for him to avoid the necessity of moving to suppress evidence which the government does not intend to use.").

Although I appreciate the burden placed on defendants in having to review the many hours of electronic intercepts, given the purpose of the rule, I find no basis for the government to more specifically identify the evidence that it intends to use in its case in chief at trial. To do so would necessarily aid defendants in ascertaining the government's trial strategy. Therefore, this aspect of defendant's motion is denied.

**P.** **Motion for Early Disclosure of <u>Brady</u> Material**

Defendants Whiteford and Koschtschuk seek early disclosure of all <u>Brady</u> material. Koschtschuk's motion [188-4], pp. 40-53; Whiteford's motion [185], ¶¶46-54. The government responds that "all <u>Brady</u> material will be turned over to counsel when the §3500 material is made available". Government's response [192], p. 22. Based upon the government's representation, and on the assumption that Judge Skretny will order disclosure in sufficient time for the defendant to have a fair opportunity to utilize the information at trial, this aspect of defendants' motion is denied as moot.

**Q.** **Motion for Preservation of Evidence**

Defendant Koschtschuk requests that the government preserve evidence. Koschtschuk's motion [188-4], pp. 65-67. The government responds that it will preserve evidence as a matter of course. Government's response [192], p. 30. Given the government's representation, this aspect of defendant's motion is denied as moot.

**R.      Motion for Disclosure of Residual Exception Statements Under Rule 807**

Defendant Koschtschuk seeks disclosure of residual statements made pursuant to Federal Rules of Evidence 807.  Koschtschuk's motion [188-4], pp. 36-37.  The government responds that it intends to offer no Rule 807 evidence. Government's response [192], p. 30. Based upon the government's representation, this aspect of defendant's motion is denied as moot.

**S.      Motion for Pre-Trial Access to the Prosecution's Witnesses**

Defendant Koschtschuk acknowledges the general rule that in non-capital cases the defendant has no constitutional right to production of the names and addresses of prospective witnesses.  However, he argues "that this rule is suffering from increasing erosion." Koschtschuk's motion [188-4], pp. 27-29.

"While the Court has the discretion to compel pre-trial disclosure of the Government's witnesses in certain circumstances, Fed.R.Crim.P. 16 does not require the Government to turn over this information in general. United States v. Bejasa, [supra]. Rather, the Court must 'balance the defendant's need for disclosure with the government's interest in protecting the identity, prior to trial, of prospective witnesses.'" United States v. Morales, 1993 WL 465209, *11  (S.D.N.Y.1993).

The sole Second Circuit case relied upon by defendant is United States v. Baum, 482 F. 2d 1325, 1331-1332 (2d Cir. 1973).  In Baum, the court found that it was reversible error for the prosecution not to have previously disclosed a witness who testified concerning prior criminal conduct.  Id., 482 F. 2d at 1331.  In so holding, the court noted that "advance disclosure

presented no possible source of present danger to the witness or others. There was no thought that this witness would be reluctant to testify upon disclosure since he was a volunteer who solicited the government to call upon him in the hope of early release from confinement." Id.

The circumstances presented here are substantially different from those presented in Baum. Given the allegations of violence in the third superseding indictment, and there being a related case involving threats against a potential witness to this case (United States v. Koschuk, 9-cr-0323(S)(M)), I see no reason for earlier disclosure of the government's witnesses. Therefore, this aspect of defendant's motion is denied.


**T.      Motion for Bills of Particulars**

A number of the defendants have moved for bills of particulars seeking particularization of the applicable counts in the third superseding indictment. Beutler's motion [189]; Summerville's motion [191]; [188-5], pp. 15-16; Lathrop's motion [188-2], pp. 5-7; Murphy's motion [188-2], pp. 9-13; Geiger's motion [188-5], pp. 1-7; Rogacki's motion [188-5], pp. 18-29; Rogowski's motion [188-2], pp. 16-18; Phillians' motion [188-2], pp. 23-26; Treadway's motion [188-2], pp. 35-37; Michael Segool's motion [188-5], pp. 9-14; Alan Segool's motion [188-2], p. 27-33; Koschtschuk's motion [188-3], pp. 1-35; Utz's motion [188-2], pp. 1-2.

The circumstances warranting a bill of particulars are limited. A defendant may obtain a bill of particulars only if the requested information is necessary "(i) to enable him to prepare his defense; (ii) to avoid unfair surprise at trial; and (iii) to preclude a second prosecution for the same offense." United States. v. Persico, 621 F. Supp. 842, 868 (S.D.N.Y.

1985).  "In deciding a motion for a bill of particulars, '[t]he important question is whether the information sought is necessary, not whether it is helpful.'" United States v. Conley, 2002 WL 252766, *4 (S.D.N.Y. 2002). A bill of particulars "should not function to disclose evidence, witnesses, and legal theories to be offered by the Government at trial or as a general investigative tool for the defense". United States v. Henry, 861 F. Supp. 1190, 1197 (S.D.N.Y. 1994).  "Whether to grant a bill of particulars rests within the sound discretion of the district court." United States v. Panza, 750 F. 2d 1141, 1148 (2d Cir. 1984).

"These principles must be applied with some care when the Government charges criminal offenses under statutes as broad as RICO. With the wide latitude accorded the prosecution to frame a charge that a defendant has 'conspired' to promote the affairs of an 'enterprise' through a 'pattern of racketeering activity' comes an obligation to particularize the nature of the charge to a degree that might not be necessary in the prosecution of crimes of more limited scope." United States v. Davidoff,  845 F. 2d 1151, 1154 (2d Cir. 1988).

For example, in United States v. Bortnovsky, 820 F. 572 (2d Cir. 1987), a RICO prosecution, in which the government alleged a scheme to defraud through submission of false insurance claims for burglary losses and fire damage, the Second Circuit found that defendants were "hindered in preparing their defense by the district court's failure to compel the Government to reveal crucial information: the dates of the fake burglaries and the identity of the three fraudulent documents. Appellants were forced to explain the events surrounding eight actual burglaries and to confront numerous documents unrelated to the charges pending."  820 F. 2d at 574-575.  "The Government did not fulfill its obligation merely by providing mountains of

documents to defense counsel who were left unguided as to which documents would be proven falsified or which of some fifteen burglaries would be demonstrated to be staged." Id. at 575.

Similarly, in Davidoff, the RICO conspiracy count alleged a pattern of racketeering activity and that the extortion offenses "included but were not limited to" the four extortion counts in the indictment. 845 F. 3d at 1153. The defendants' unsuccessfully requested a bill of particulars about the unspecified extortion offenses. At trial the government introduced evidence of extortion offenses that were not alleged in the indictment. Id. The Second Circuit reversed because the district court denied defendant's motion for a bill of particulars identifying victims of a RICO scheme and allowed the government to introduce evidence at trial as to acts of extortion not alleged in the indictment.

Rather than creating a broad presumption in favor of the entitlement to bills of particulars in RICO cases, the Second Circuit was careful to limit Davidoff's holding to the facts presented: "We do not mean to imply that even in a RICO case the prosecution must always disclose in advance of trial every act it will prove that may violate some criminal statute. But here it is simply unrealistic to think that a defendant preparing to meet charges of extorting funds from one company had a fair opportunity to defend against allegations of extortions against unrelated companies, allegations not made prior to trial." Id. at 1154. However, the discernible principles from Davidoff and Bortnovsky are that a bill of particulars is warranted if the indictment does not fully delineate the alleged unlawful conduct and that "a large volume of discovery warrants a bill of particulars if it obfuscates the allegedly unlawful conduct and unfairly inhibits the defendant's preparation for trial." United States v. Mahaffy, 446 F. Supp. 2d 115, 120 (E.D.N.Y. 2006).

According to the government, it "has provided an enormous amount of discovery material including all audio and video recordings, and the complaint, search warrant and Title III affidavits. The recordings, when matched to the various affidavits, provide the defendants with a plethora of evidence and a virtual roadmap through that evidence." Government's response [192], p. 14. However, "it is no solution to rely solely on the quantity of information disclosed by the government; sometimes, the large volume of material disclosed is precisely what necessitates a bill of particulars." United States v. Bin Laden, 92 F. Supp. 2d 225, 234 (S.D.N.Y. 2000), aff'd, 552 F. 3d 93 (2d Cir. 2008), rehearing denied in part, 553 F. 3d 150 (2d Cir. 2009), cert. denied, 129 S.Ct. 2778 (2009).

For example, Count 10 of the third superseding indictment alleges that between August 8, 2008 through May 4, 2009 defendants Koschtschuk, Alan Segool, Rogowski, Herzog, Carter, Lathrop, Beutler, Phillians, Michael Segool, Treadway, Whiteford, Kuznicki conspired to commit assaults resulting in serious bodily injuries to members of the Kingsmen Motorcycle Club, including William Slater and Ronald Blair. Considering the number of members of the conspiracy, the duration of the conspiracy and the government's acknowledgment that it has produced an "enormous amount of discovery material", the generalized allegations of Count 10 of the third superseding indictment are not sufficient to put defendants on notice of the crimes alleged against them. Defendants Phillians, Michael Segool, and Carter are also only named in Count 10, thereby necessitating that additional particulars be provided. See United States v. Feola, 651 F. Supp. 1068, 1133 (S.D.N.Y. 1987), aff'd, 875 F. 2d 857 (2d Cir.), cert. denied, 493 U.S. 834 (1989)("Where a defendant is named in only one count and particular information as to him has not been provided, his request for the time, location and persons present at the time of

the alleged transaction may be granted so that he may properly prepare his defense."). Moreover, Court 10 is captioned "Violent Crime in Aid of Racketeering: The Vote to Continue the War - - Conspiracy to Assault Members of the Kingsmen".  However, there are no allegations in Count 10 as to a vote to continue the war.   Therefore, for Count 10 of the third superseding indictment, the government shall specify the manner in which each defendant conspired to assault members of the Kingsmen Motorcycle Club (with or without dangerous weapons), as well as the dates and circumstances of the assaults. The government shall also specify the "vote to continue the war", including when and where this occurred, the substance of the vote, and who voted.

However, the remaining counts of the third superseding indictment  generally contain a sufficient amount of detail to adequately apprise defendants of the charges against them.  *See* United States v. Muyet, 945 F.Supp. 586, 599 (S.D.N.Y. 1996) ("With respect to the RICO enterprise and the RICO conspiracy charges, the indictment provides the defendants with: (1) the names and aliases of the defendant members of the RICO enterprise and conspiracy; (2) the name of the enterprise; (3) a brief description of the purposes, means and methods of the RICO enterprise; (4) the area in which the enterprise operated; and (5) the approximate duration of the enterprise. Furthermore, as explained below, the indictment provides ample detail regarding the alleged predicate acts of the RICO enterprise. The Court finds that the indictment, by itself, fully satisfies the specificity requirements of Rule 7."). Defendants' complaints concerning the lack of detail are misplaced. For example, defendant Koschtschuk argues that the First Racketeering Act of Count One, which "alleges, in sum, that defendant Koschtschuk and 'others known and unknown to the Grand Jury' committed extortion and/or robbery. The dates provided for these acts are 'in or about 1996 or 1997' and the place is merely alleged as 'in the

Western District of New York'". Koschtschuk's reply [208], p. 2. However, this argument ignores the subsequent allegation in the indictment describing the alleged extortion with particularity:  "the defendant unlawfully and knowingly obtained property consisting of a motorcycle belonging to Kevin McHenry by instilling fear in McHenry that the defendant and another would engage in conduct constituting a crime, namely, an assault on McHenry"  Third Superseding Indictment [143], p. 5.

At oral argument at least one defendant argued that  the voluminous amount of electronic surveillance produced makes it nearly impossible to link the allegations of the third superseding indictment to the supporting discovery.  However, at oral argument the government represented that the electronic surveillance discovery is cataloged pursuant to date and time, thereby allowing defendants to link the discovery with the allegations of the third superseding indictment. Thus, I also do not find that the volume of discovery inhibits the defendants' preparation for trial other than with respect to Count 10 of the third superseding indictment.

Many of the defendants seek information concerning their entry into the alleged conspiracy. *See*, *e.g.*, Summerville's motion [191], Counts 11(c) and 12(c).  However, "the Government need not provide additional information at this time concerning the time and circumstances of  [defendant's] alleged entry into the conspiracy." United States v. Minaya, 395 F. Supp. 2d 28, 38 (S.D.N.Y. 2005) (citing  Feola, supra, 651 F. Supp. at 1132-33 ("Details as to how and when the conspiracy was formed, or when each participant entered it, need not be revealed before trial."). See Muyet, supra, 945 F.Supp. at  599 ("The defendants are not entitled to a bill of particulars setting forth the 'whens', 'wheres,' and 'with whoms' regarding the Nasty Boys enterprise and conspiracy").

Defendants also seek to learn whether they are being charged as principals or aider and abettors.  *See*, *e.g.*, Koschtschuk' motion [188-3], Count 18(j); Geiger's motion [188-5], p. 6; Michael Segool's motion [188-5], p. 12, ¶(e).  However, "the Government need not specify which defendants are charged as principals and which are charged as aiders and abettors, since this would reveal the Government's theory underlying those counts of the indictment."  United States v. Mannino, 480 F. Supp. 1182, 1185 (S.D.N.Y.1979).

A number of the defendants also request their acts that affected interstate and foreign commerce.  *See, e.g.*, Summerville's motion [191], Counts 11(b) and 12(b).  At oral argument the government mooted these requests by providing particulars as to the interstate commerce nexus that is alleged.   The government also provided particulars as to when defendants withdrew from the conspiracy and indicated that it would provide particulars as to when Ignasiak entered the conspiracy.

Many of the defendants' remaining  requests for particulars seek evidentiary detail.  Although this may be helpful to defendants' trial preparation, it is not necessary to defend against the charges as alleged.  *See e.g.*, "Identify the owner of, and any person or entity having a proprietary interest in, the building located at 13 Martin Avenue, Blasdell, New York", "Specify the damage to the building located at 13 Martin Avenue allegedly caused by the act involving arson" Alan Segool's motion [188-2], p. 29; "State whether a police officer report was filed as a result of [the April 6, 2004] incident" Murphy's motion [188-2], p. 12; "Specify the height and weight of Ignasiak" Geiger's motion [188-5], p. 6; "Specify the type and make of gun used in the alleged incident" Rogacki's motion [188-5], p.20.

Defendants also seek the identity of known, but uncharged co-conspirators. *See, e.g.*, Utz's motion [188-2], p. 1, ¶1. I reach a different decision with respect to this request.

"In deciding whether a defendant's demand for the names of known unindicted co-conspirators would achieve these ends, courts should consider the following factors: (1) the number of co-conspirators; (2) the duration and breadth of the alleged conspiracy; (3) whether the Government otherwise has provided adequate notice of the particulars; (4) the volume of pretrial disclosure; (5) the potential danger to co-conspirators and the nature of the alleged criminal conduct; and (6) the potential harm to the Government's investigation. If there are a large number of co-conspirators and a long-running conspiracy, a defendant is more likely to be surprised by the identity of other co-conspirators, whom he may never have met. If the Government has failed to provide adequate notice of the particulars, or if the discovery has been voluminous, identification of known unindicted co-conspirators will help a defendant focus his investigation and prepare for trial. On the other hand, considering the potential danger to the co-conspirators and the risk of compromising continuing investigations allows a court to balance a defendant's need for the information against legitimate law enforcement concerns." United States v. Nachamie, 91 F. Supp. 2d 565, 572 -573 (S.D.N.Y. 2000).

Given the underlying accusations of violence, I am concerned about the disclosure of the names of known but unindicted co-conspirators. *See* United States v. Columbo, 2006 WL 2012511, *6 n. 18 (S.D.N.Y. 2006) ("Case law suggests that requests for bills of particulars have rarely been granted in cases involving defendants charged with violent offenses."); United States v. Santiago, 174 F. Supp. 2d 16, 35 (S.D.N.Y. 2001) ("The identities of unindicted co-conspirators have been disclosed primarily in cases in which violence was not

alleged."). However, disclosure has been ordered despite allegations of violent crime. *See* <u>United States v. Lino</u>, 2001 WL 8356, *12-13 (S.D.N.Y. 2001)(23 defendants charged in a 26 count indictment with a large number of schemes and a range of predicate acts with voluminous discovery).

Balancing the need for this information to prevent unfair surprise at trial against the need to protect the unindicted co-conspirators from potential violence, I adopt the approach in <u>Lino</u>, <u>supra</u>, where the court conditioned disclosure of the unindicted co-conspirators on the government's good faith assessment of whether disclosure of their identities would place them at harm: "This Court . . . directs the Government to file a bill of particulars identifying all co-conspirators and co-schemers who either will be called to testify, or be referred to, at trial. Specifically, the bill of particulars shall state, with respect to each paragraph in which the word 'others' appears, the identity of the person or persons referenced by the expression 'others,' if known to the Government, in any count or racketeering act in which the Government will contend at trial that that person was a co-conspirator of a defendant or defendants. Mindful of the safety concerns expressed by the Government, the Government may withhold the identity of a co-conspirator or co-schemer if it makes a good-faith determination that disclosure of that person's identity will expose the person or someone else to a significant risk of bodily harm." 2001 WL 8356 at *13.

Therefore, with the exception of Count 10 and the disclosure of the identity of unindicted co-conspirators, this aspect of defendants' motion is denied as set forth herein.

**CONCLUSION**

For these reasons, defendants' pretrial motions are GRANTED in part and DENIED in part as set forth herein.

**SO ORDERED**.

DATED:        February 16, 2010

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge
